## Case No. 467.

### ANONYMOUS.

[1 Pa. Law J. 323; 1 Pa. Law J. R. 121.]

Circuit Court, E. D. Pennsylvania. Nov. 10, 1842.

VOLUNTARY BANKRUPTCY — GENERAL ASSIGNMENT — VALIDITY.

A general assignment without preferences is valid, under the bankrupt law; and this, though the assignor have filed a petition to be decreed a bankrupt, provided, that a decree of bankruptcy have not yet passed.
[Cited in Sullivan v. Hieskill, Case No. 13,594.]

In bankruptcy. Breneman's Case, [Case No. 1,830,] having decided that a general assignment with preferences is an act of bankruptcy, and void under bankrupt law, the question was raised, in several subsequent cases, whether a general assignment without preferences is likewise void. It was admitted by those who maintained the validity of such assignments, that under the English decisions they were void; but it was asserted that these decisions had given dissatisfaction both in England and here; and that our courts being free to decide the question on principle, should not regard those decisions. It was a doctrine which had not proved satisfactory even at home. Eden spoke of it, as a doctrine "difficult to understand." Page 28. As one whose reasons, "are by no means satisfactory." Id. Lord Eldon had more than once expressed his disapprobation of the doctrine. [Ex parte Bourne,] 16 Ves. 148; [Dutton v. Morrison,] 17 Ves. 198. It got foot from a N. P. decision of Lord Mansfield, (Co. Bankr. Law, 100,) whose great name controlled subsequent judges against their own judgment. On principle, it was not easy to understand the doctrine. Such an assignment is good at common law, by the statutes of Eliz., and it is not declared by the bankrupt act to be void. Nor was such an assignment against the policy of the act. The policy of the act is, that creditors shall be paid alike; and the act has no further policy. Now, a general assignment, without preferences, did exactly this thing. It might not do it in the manner and through the same forms as the bankrupt law would do it; but the machinery of the act was no part of its policy. The court had no right to extend the policy of the bankrupt act, beyond the point that the bankrupt act had, itself, defined.[1] Since the decision in Bennett's Case, [Case No. 1,309,] confirmed in Ex parte Dudley, [Id. 4,114,] it was argued that if a debtor had no power to make a general assignment, then the effect of the bankrupt law was to assist in giving preferences. For as a voluntary petitioner in bankruptcy is bound to set forth in his petition "an accurate inventory of his property, &c. and the location and situation of each and every parcel and portion thereof."

---

[1] See Shouse's Case, [Case No. 12,815.]

the effect was to indicate to a pressing creditor, the manner in which he is to satisfy his execution.

On the other side, it was said that the question had been settled in England by a succession of her most able judges, including Lord Hardwicke, De Grey, and Mansfield: that there was nothing in the English acts, essentially to distinguish them on this point from ours; that the reasoning of the court in Breneman's Case, [supra,] led to the doctrine of the English courts, and that that doctrine had been judicially affirmed in this country. By Judge Concklin, in the western district of New York. See [Barton v. Tower, Case No. 1,085.] It was urged likewise, that though an assignment of the sort in question, did, to a certain extent, do what a decree of bankruptcy would do, yet that those assignments being regulated entirely by state laws, the property of the debtor, and the rights of the creditor, would be subjected to a control quite collateral to this court, and which might endanger both, and be at variance with the spirit of the bankrupt law. In Pennsylvania, to this day, the assignee was selected by the debtor, and until lately (14th April, 1828) gave no security for the performance of his duty. The federal legislature had provided for the whole subject of insolvent debtors; and it was not wise to allow other jurisdictions to interfere with what had been provided for by congress. The question was adjourned into the circuit court in the following form: "First—Is an assignment of all a debtor's property made since the passage of the bankrupt law, for the equal benefit of all his creditors, void as against the assignee under the bankrupt law, so that the latter may recover the property. Second—Can a petitioner for the benefit of the bankrupt law make a voluntary assignment of all his property for the equal benefit of his creditors, after filing his petition and before decree?"

BALDWIN, Circuit Justice. Neither of these assignments is an act of bankruptcy as defined in the first section of the bankrupt act. There can be no pretence of their being fraudulent upon creditors, or a fraud on the policy of that act, inasmuch as the debtor voluntarily does the very thing, which it is the policy of the law to enforce—an equal distribution among all his creditors, of all his property, real and personal, without preference. The second section provides, "That all future payments, securities, conveyances, or transfers of property, or agreements made or given by any bankrupt in contemplation of bankruptcy, and for the purpose of giving any creditor, endorser, surety, or other person any preference or priority over the general creditors of such bankrupt, and all other payments, securities, conveyances, or transfers of property, or agreements made or given by such bankrupt, in contemplation of bankruptcy, to any

person or persons whatever, not being a bona fide creditor or purchaser for a valuable consideration, without notice, shall be deemed utterly void, and a fraud upon this act; and the assignee under the bankruptcy shall be entitled to claim, sue for, recover, and receive the same as part of the assets of the bankruptcy; and the person making such unlawful preferences and payments, shall receive no discharge under the provisions of this act: provided, That all dealings and transactions by and with any bankrupt, bona fide made and entered into more than two months before the petition filed against him, or by him, shall not be invalidated or affected by this act: provided, That the other party to any such dealings or transactions had no notice of a prior act of bankruptcy, or of the intention of the bankrupt to take the benefit of this act. And in case it shall be made to appear to the court, in the course of the proceedings in bankruptcy, that the bankrupt, his application being voluntary, has, subsequent to the first day of January last or at any other time in contemplation of the passage of a bankrupt law, by assignment or otherwise, given or secured any preference to one creditor over another, he shall not receive a discharge unless the same be assented to by a majority in interest of those of his creditors who have not been so preferred." A careful analysis of this section is necessary to its proper understanding in all its parts and their bearing on each other. Its first provision is "that all future payments," &c., made "by any bankrupt in contemplation of bankruptcy, and for the purpose of giving any person any preference over his general creditors." The second is "and all other payments," &c., "made in contemplation of bankruptcy, to any person not being a bona fide creditor, or purchaser for a valuable consideration without notice, shall be deemed utterly void and a fraud upon this act, and the assignee shall be entitled," &c. Two classes of cases are contemplated: both are put on the same footing, the first is a payment, &c., made after the passage of the act, which must have two ingredients. 1. It must be made "in contemplation of bankruptcy," &c. 2. For the purpose of giving a "preference over general creditors." If either is wanting, the case is not within this provision. The second is, "all other payments," &c., made at any time, "in contemplation of bankruptcy," to any person "not a bona fide creditor," without notice: here are likewise two ingredients necessary to bring a case within this class, the contemplation of bankruptcy, and a payment &c., to a person not a bona fide creditor, &c., or who has notice. This part of the law is silent as to the subject of notice, but the intention is apparent by referring to the first ingredient, "made in contemplation of bankruptcy," as the subject of notice. This means without notice of the intention or de-

sign of the bankrupt having a contemplation of bankruptcy. This is the more apparent from the language of the second proviso, where the subject of the notice is thus defined: "No notice of a prior act of bankruptcy, or of the intention of the bankrupt to take the benefit of this act." Thus referred, the subject of the notice is perfectly appropriate to the respective provisions of this section. Should a question arise on the meaning of the words "all future payments," &c.—that is to say—whether this means from the passage of the act, or, the time when it takes effect, an answer is at hand. Laws speak from the time of their enactment, unless there be some prescribed limitation to control their effect. If a rule of conduct is prescribed, as it operates by mere force of the law, no other time than the passage of the law, can be taken as intended. Laws may be retrospective likewise, as is illustrated in the section under consideration. The expression, "all future payments," refers to those made after the 19th August, 1841, as clearly as if that day had been inserted; and there being nothing in any other part of the law, by which its operation in this respect is controlled, the law operates from that day.

The next clause is retrospective, providing that any assignment made after the 1st January, 1841, giving a preference to one creditor over another shall prevent a discharge, unless there be obtained the assent of a majority in interest of the non preferred creditors. These clauses manifest the intention of the legislature. The first annuls the prohibited payments, &c., made after August; the second does not invalidate the preference given after January, 1841, but imposes a condition on the bankrupt as a prerequisite to his discharge. These are the definite periods from which the respective provisions take effect on the act done by the bankrupt. There is also a third clause, which must be taken in connection with the others,—"and all other payments," &c. which are indefinite as to time, operating alike on the prohibited acts, done before or after the passage of the law. So read, the whole section is harmonized. To so read it as to refer future payments, to any time other than the 19th August, would make it impossible to find out the meaning of "all other payments" in their reference to the time when the provision takes effect on the act done. The law clearly contemplates a difference in point of time, between the commission of the acts which are the ingredients of the two distinct classes of cases which are declared to be frauds upon it. If they are referred to the same time, the two classes of cases become confounded into one, which will be incapable of definition without judicial legislation. For instance, if all future payments, and all other payments, are referred to the 1st February, 1842, there is no clue by which to separate the two

classes; the law must refer to that day in both clauses and make them read, all payments made after the 1st February, 1842, leaving the words all other payments wholly inoperative. Such a construction would be inadmissible for the reasons given in the case Ex parte Irwine, [Case No. 7,086,] and on general principles. This construction, or rather plain reading of the second section, is not inconsistent with the seventeenth section, which declares, "that this act shall take effect from and after the 1st February next." This means that proceedings under the act may then commence and be carried on under and according to its provisions regulating the forms and modes of action to its close: that was the period at which the jurisdiction of the district court arose and might be exercised. But the fixing a time at which the power of that court came into existence; at which there could be judicial action on the various provisions of the law, presenting rules for the judgment of the court; or merely delineating a course for its proceedings, is wholly distinct from fixing a time at which certain defined acts of the debtor should be deemed frauds upon the law, and which the court should be bound to adjudge void. Judicial action under the law could not begin till the appointed time; but when it begins, the law has prescribed definite rules by which to judge of the validity of antecedent acts bearing on the policy of the law. It cannot be supposed that no provision was intended to be made for those acts of the debtor, done between the passage of the act and the time when proceedings might begin under it, which would contravene the whole object of the law, and defeat an equal, or any distribution of the debtor's property among his general creditors, by permitting preferences made in contemplation of bankruptcy, or assignments so made, to others than bona fide creditors without notice. Such an intention would be as inconsistent with the general policy of the whole law, as repugnant to the definite provisions of the second section. On the contrary, the intent of the law as expressed in plain language, the provisions to prevent frauds upon it, are too manifest to admit of a doubt. These considerations suffice to dispose of the first question presented. An assignment made after the passage of the bankrupt act, is within the second section, if made in contemplation of bankruptcy, and for the purpose of giving any preference over the general creditors: it is void as a fraud upon the law; so if the assignee is not a bona fide creditor, or purchaser without notice. But an assignment for the equal benefit of all creditors, is not within the first clause as to all future payments,—a preference being an indispensable ingredient to make it void; and if the assignees fill the character of bona fide creditors or purchasers for valuable consideration without notice, a like ingredient is wanting

to constitute a case of fraud upon the law within the second clause, as to all other payments, &c. It follows that such an assignment as stated in the first question being valid independently of the bankrupt act, and not invalidated by any of the provisions of the act, the assignee under that act cannot recover the property assigned.

The second question adjourned to this court, relates to a voluntary assignment, of all the debtor's property, for the equal benefit of all his creditors, after filing his petition. The foregoing remarks will apply, to this case, unless the law give some effect to the filing of the petition on the property of the debtor, before he is declared a bankrupt, by which he is prohibited from making any valid disposition of it, after the filing the petition and before a decree of bankruptcy, —in other words, unless the decree relates to the filing the petition, so as to act on an assignment otherwise valid. In Ex parte Dudley, [Case No. 4,114,] this court expressed itself fully on the effect of a decree on liens created after the filing the petition, and before the decree. In the reasons for the opinion then delivered, there will be found the grounds of the decision that the decree had no effect by relation, on antecedent judgments, executions, and levies on the property of a bankrupt; the same course of reasoning and the reference to authority in that case, will apply to an assignment such as stated in this question, and we think with greater force on the language of the third section taken in connection with the first.

By the first section it is provided, "That all persons whatsoever," &c. "who shall by petition," &c. "apply to the proper court," &c. "for the benefit of this act, and therein declare themselves to be unable to meet their debts and engagements, shall be deemed bankrupts within the provisions of this act, and may be so declared accordingly by a decree of such court." This is the definition of a voluntary bankrupt. The following of an involuntary one: "All persons being merchants," &c. "shall be liable to become bankrupts," &c. "and may upon the petition of one or more creditors," &c. "be so declared in the following cases, to wit," &c. These definitions must be carried into the third section, to explain the true meaning of its provisions, which are, "That all the property and rights of property, of every name and nature, and whether real, personal or mixed, of every bankrupt, except as is hereinafter provided, who shall by a decree of the proper court be declared to be a bankrupt within this act, shall, by mere operation of law, ipso facto, from the time of such decree, be deemed to be divested out of such bankrupt, without any other act, assignment, or other conveyance whatsoever; and the same shall be vested, by force of the same decree, in such assignee as from time to time shall be appointed by the proper court for this purpose; which power of appointment and removal such court may exercise at its discretion, toties quoties; and the assignee so appointed shall be vested with all the rights, titles, powers, and authorities to sell, manage, and dispose of the same, and to sue for and defend the same, subject to the order and direction of such court, as fully, to all intents and purposes, as the same were vested in, or might be exercised by, such bankrupt before or at the time of his bankruptcy declared as aforesaid; and all suits in law or in equity then pending, in which such bankrupt is a party, may be prosecuted and defended by such assignee to their final conclusion, in the same way and with the same effect, as they might have been by such bankrupt."

That the term bankrupt is used in a double sense in the first clause of the first section, is evident. A petitioner for the benefit of the act is deemed to be a bankrupt within its purview, from the time of filing his petition, and may be declared so by a decree:—in the second clause, a merchant is liable to become a bankrupt on the petition of a creditor, and may be so declared accordingly in the cases specified; thus discriminating between the person who is decreed a bankrupt in the one case, or liable to become bankrupt in the other, and those who are actually declared so by a decree. Having drawn this distinction in the first section, it cannot be supposed that it was lost sight of in the third, nor that in prescribing the time and the acts by which the property of the bankrupt should pass to the assignees, congress intended to use the term bankrupt, as denoting one who was not declared so, but was merely deemed so, or liable to become so. Such supposition is contrary not only to settled rules of interpreting law, but to the plain language of this section—"All the property and right of property," &c. of every bankrupt "who shall by a decree of the proper court be declared a bankrupt within this act, shall by mere operation of law, ipso facto from the time of such decree be deemed to be divested," &c.: not all the property of every person who is deemed to be, or liable to become a bankrupt, but of every one who is so decreed to be. It is only the decreed bankrupt whose property passes from him to the assignee by the decree: it is the property which is owned by him at that time, not what had been divested by legal process, or a previous valid sale or assignment, by which rights of property had become vested in others. The decree operates only on his property and rights of property. If this clause of the law stood alone. it would not admit of the construction, that the expression, a person who was deemed, or liable to become a bankrupt, meant the same thing as a bankrupt who shall by a decree of the proper court, be declared to be a bankrupt: That potential, was actual, adjudged, bankruptcy; and if this clause could be so tor-

tured; if it were the only one in this section which bore on this subject, it would be in direct collision with the two following; "and the same (all property and rights of property) shall be vested by force of the same decree, in such assignee," &c. be "and the assignee so appointed," &c. "shall be vested with all the rights," &c. "and to sue for and defend the same," &c. "as fully to all intents and purposes, as the same were vested in, or might be exercised by such bankrupt, before or at the time of his bankruptcy declared as aforesaid." This clause points directly to the declared, and not the deemed or potential bankruptcy. It gives the assignee the same, and no other right or power, than existed in the debtor up to the decree. If the bankrupt had no power over his property after his petition was filed, or a merchant, &c. after an act of bankruptcy, this language is senseless; and congress must be deemed incapable of expressing their intention in intelligible terms, and not to have understood what they have said, in prescribing a rule of property. Had it been intended that any other act than the decrees should directly or by retrospection operate from the filing of the petition, or the act of bankruptcy, it was most easy to have said so, as in the tenth section of the act of 1800, 1 Story's Laws, 736, but this law has deliberately pointed to the decree as the only operative act, and by· necessary implication from plain language declared, that it did not affect what was done before or at the time of the judicial declaration of bankruptcy. The property of the debtor passed from him to the assignee by the judgment of the court, and not the acts of the bankrupt previously, or by making the judgment so operate by relation.

The next clause is to the same effect—"and all facts in law or in equity then pending, in which such bankrupt is a party, may be prosecuted, and defended by such assignee to their final conclusion, in the same way and with the same effect, as they might have been by such bankrupt." Suits then pending, means, at and before the decree: Such bankrupt, means one so declared by a decree. Now if the decree operates by relation to the petition, on property which the bankrupt then owned, but of which he was divested by operation of law or his own act, it must have the same relation to suits then depending, and if the court may place in the hands of a receiver the property of a bankrupt before a decree, they may likewise appoint a prochein ami to prosecute and a guardian to defend all suits to which the bankrupt was a party at the time of filing the petition, or the act of bankruptcy. When it thus appears that congress has in each of these clauses, so expressly declared the decree to be the act which divests the bankrupt of all his property and rights of property—vested the same in the assignee precisely as it was in the debtor before and at the time of rendering the decree—and transferred to the assignee the management of all suits depending at that time, it seems impossible to give, by mere construction, the same effect to the filing the petition, or an act of bankruptcy, without the assumption by the court, of legislative power. A general view of the whole section, equally precludes all relation of the effect of the decree, to any antecedent act of either a petitioner for the benefit of the act,˙ or a merchant, &c. who may be brought within it on the petition of a creditor.

It cannot be denied, that all the provisions of this section apply equally to cases of voluntary and involuntary bankruptcies, in respect to the operation of the decree, and to the term bankrupt throughout, while the first section discriminates between a petitioner for the benefit of the act; declaring that he shall be deemed a bankrupt, and the merchant, &c. who shall be liable to become a bankrupt, but is nowhere declared to be deemed or considered as one, in any part of the law, before a decree. Now if the term bankrupt refers to the petition in the one case, and the act of bankruptcy in the other, it includes the merchant who was not so at the time, but in the very words of the law was only liable to become a bankrupt, and could become one only by a decree; thus giving the same meaning to these two different phrases "shall be deemed bankrupt," and "shall be liable to become bankrupt," and making the third section declare a merchant to be by relation an actual bankrupt, when, by the first section he could not be declared one, unless he was brought within one of the defined cases. In our view of this whole section, it refers only to the bankrupt who is declared so by a decree; to his "bankruptcy declared as aforesaid," and to "every bankrupt alike,"˙ and to "such bankrupt," and such only as on their own, or the petition of a creditor, had been judicially determined to be such.

When an attempt is made to engraft the doctrine of relation on the provisions of this section, it is unsupported by any one title in the whole law, to justify it. As a matter of construction, it is a gratuitous assumption of an intention of the legislature, as repugnant to their words as to the general design of all the parts which constitute the system of bankruptcy which they have established. If the principles and rules by which statutes are expounded, will justify the insertion of a retrospective effect of a decree to any prior act, it may as well be applied to the passage of a bankrupt act, as a petition voluntarily filed under it, or an act committed which brings it to bear on a person against his will. The relation to an act of bankruptcy, was an express provision of the bankrupt act of 1800, and was from the first, a part of the English system of bankruptcy; but this furnishes no good reason for our adopting, by mere judicial power, a principle for which there is no colour in the act of 1841, ˙and which was embodied in the act of 1800, only

by the force of a legislative enactment, in language too plain for doubt, or even for argument. The reasons which induced the legislature to ingraft the doctrine of relation on a system of involuntary bankruptcy, can have no operation on the system of the present act, which introduces a new and anomalous feature, that of voluntary bankruptcy in which the debtor is the actor. In the former, the debtor was forced into the operation of the law: in the latter he comes voluntarily, at such time as he pleases; and as held by the learned judge of the first circuit, and by this court, can withdraw his petition at any time before a decree. If then the district court should assume the power of placing the property of a petitioner into the hands of a receiver, and appoint a person to conduct the suits to which he is a party, a withdrawal of the petition would restore his property, and give him the management of his suits; a consequence which would be unavoidable, thereby leaving the court nothing on which it could exercise any power, and enabling the petitioner to defeat what had been ordered, while there was a case for judicial action. It cannot be imagined that such was the intention of the legislature, or that it could have been their opinion, that the law would admit of such a construction, as to make a rule of property dependent on an act of a debtor which he could revoke and renew at his option. In denying the doctrine of relation, we run counter to no provision of the law. In adopting it, we should introduce a feature at war with its whole scope and policy, as well as repugnant to its plain language. It is therefore the opinion of the court that an assignment such as is stated in the second question is valid under the bankrupt act. The first question must consequently be answered in the negative, and the second in the affirmative.